**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

**RAYNALDO RENEE REYNA, SR.**

        **Plaintiff,**                    **CIVIL ACTION NO. 17-cv-12762**

        **v.**                               **DISTRICT JUDGE GEORGE CARAM STEEH**

**COMMISSIONER OF**                **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

        **Defendant.**

_____/

**REPORT AND RECOMMENDATION**

Plaintiff Raynaldo Renee Reyna, Sr. seeks judicial review of Defendant Commissioner of Social Security's determination that he is not entitled to social security benefits for his physical impairments under 42 U.S.C. § 405(g). (Docket no. 1.) Before the Court are Plaintiff's Motion for Summary Judgment (docket no. 15) and Defendant's Motion for Summary Judgment (docket no. 19). The motions have been referred to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). (Docket no. 4.) The Court has reviewed the pleadings, dispenses with a hearing pursuant to Eastern District of Michigan Local Rule 7.1(f)(2), and issues this Report and Recommendation.

**I.**      **RECOMMENDATION**

For the reasons that follow, it is recommended that Plaintiff's Motion for Summary Judgment (docket no. 15) be **DENIED** and Defendant's Motion for Summary Judgment (docket no. 19) be **GRANTED**.

## II.  PROCEDURAL HISTORY

Plaintiff protectively filed an application for a period of disability and disability insurance benefits on January 5, 2012; Administrative Law Judge (ALJ) Nancy M. Stewart issued an unfavorable decision with regard to that application on August 30, 2013.  (TR 55-68.)  Plaintiff then protectively filed the instant application for a period of disability and disability insurance benefits on December 10, 2014, alleging that he has been disabled since July 1, 2010, due to type 2 diabetes, a herniated disc at T-7, stenosis in his lower back, bilateral carpal tunnel syndrome, several bulged discs in his neck, a seventh grade education, and high blood pressure.  (TR 11, 151-52, 177.)  The Social Security Administration denied Plaintiff's claims on April 3, 2015, and Plaintiff requested a *de novo* hearing.  (TR 79-91, 97-98.)  On March 30, 2016, Plaintiff appeared with a representative and testified at the hearing before ALJ Richard Horowitz.  (TR 29-51.)  At the hearing, Plaintiff amended his alleged onset date to the day after ALJ Stewart issued her unfavorable decision, August 31, 2013.  (TR 34-35.)  ALJ Horowitz subsequently issued an unfavorable decision on April 18, 2016, and the Appeals Council declined to review the ALJ's decision.  (TR 1-5, 11-24.)  Plaintiff then commenced this action for judicial review, and the parties filed cross motions for summary judgment, which are currently before the Court.

## III.  HEARING TESTIMONY AND MEDICAL EVIDENCE

Plaintiff (docket no. 15 at 7-13) and the ALJ (TR 14, 16-21, 23) have set forth detailed, factual summaries of Plaintiff's medical record and the hearing testimony.  Defendant adopts the ALJ's recitation of the facts and concurs with Plaintiff's recitation to the extent that it is consistent with the ALJ's. (Docket no. 19 at 4.)  Having conducted an independent review of Plaintiff's medical record and the hearing transcript, the undersigned finds that there are no material inconsistencies between Plaintiff's and the ALJ's recitations of the record.  Therefore,

in lieu of re-summarizing this information, the undersigned will incorporate the above-cited factual recitations by reference and will also make references and citations to the record as necessary to address the parties' arguments throughout this Report and Recommendation.

### IV.    ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that Plaintiff did not engage in substantial gainful activity during the period from the amended alleged onset date of August 31, 2013, through the date last insured of September 30, 2014, and that Plaintiff suffered from the following severe impairments: degenerative disc disease of the spine, hypertensive vascular disease, and diabetes mellitus. (TR 13-14.)  The ALJ also found that Plaintiff's carpal tunnel syndrome was no longer a severe impairment and that a somatoform disorder identified by the state-agency medical consultant was not substantiated and therefore did not constitute a medically determinable impairment. (TR 14.) Next, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR 14-15.)  The ALJ then found that, through the date last insured, Plaintiff had the following residual functional capacity (RFC):

> [C]laimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except: he can push and pull within the weight limits only occasionally with the upper and lower extremities. Additionally, he can stand and walk for six out of eight hours with no prolonged walking greater than 30 minutes at a time.  Furthermore, the claimant can sit for six out of eight hours with the ability to stand and stretch for one minute at the end of each hour not to exceed ten percent of the workday.  The claimant can never climb ladders, ropes, or scaffolds, or reach overhead bilaterally.  He can occasionally climb ramps and stairs, feel, handle, balance, stoop, kneel, crouch, and operate foot controls with the lower extremities, bilaterally, and he can engage in fine fingering. Additionally, although the claimant is not capable of repetitive up and down or side-to-side movements of the neck, he retains the ability to engage in up and down or side-to-side movements of the neck frequently.  Finally, due to his subjective complaints of pain and the side effects of his medications, the claimant should be limited to unskilled work.

3

(TR 15-22.) Subsequently, in reliance on the vocational expert's (VE's) testimony, the ALJ determined that Plaintiff was capable of performing a significant number of jobs in the national economy. (TR 22-23.) Therefore, the ALJ found that Plaintiff was not disabled under the Social Security Act at any time from August 31, 2013, through the date last insured of September 30, 2014. (TR 12, 23-24.)

## V. LAW AND ANALYSIS

### A. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this Court has jurisdiction to review the Commissioner's final decisions. Judicial review of the Commissioner's decisions is limited to determining whether his findings are supported by substantial evidence and whether he employed the proper legal standards. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Walters*, 127 F.3d at 528. It is not the function of this Court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *See Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if

substantial evidence also supports the opposite conclusion. *See Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts"). "But '[a]n ALJ's failure to follow agency rules and regulations denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir. 2013) (quoting *Cole v. Astrue,* 661 F.3d 931, 937 (6th Cir. 2011)).

### B.  Framework for Social Security Determinations

Plaintiff's Social Security disability determination was made in accordance with a five-step sequential analysis.  In the first four steps, Plaintiff was required to show that:

(1) Plaintiff was not presently engaged in substantial gainful employment; and

(2) Plaintiff suffered from a severe impairment; and

(3) the impairment met or was medically equal to a "listed impairment;" or

(4) Plaintiff did not have the residual functional capacity (RFC) to perform relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(f).  If Plaintiff's impairments prevented Plaintiff from doing past work, the Commissioner, at step five, would consider Plaintiff's RFC, age, education, and past work experience to determine if Plaintiff could perform other work.  If not, Plaintiff would be deemed disabled. *See id.* at § 404.1520(g).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to

5

perform specific jobs." *Varley v. Sec'y of Health and Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

### C. Analysis

The Social Security Act authorizes "two types of remand: (1) a post judgment remand in conjunction with a decision affirming, modifying, or reversing a decision of the [Commissioner] (a sentence-four remand); and (2) a pre-judgment remand for consideration of new and material evidence that for good cause was not previously presented to the [Commissioner] (a sentence-six remand)." *Faucher v. Sec'y of Health and Human Servs.*, 17 F.3d 171, 174 (6th Cir. 1994) (citing 42 U.S.C. § 405(g)). Under a sentence-four remand, the Court has the authority to "enter upon the pleadings and transcript of the record, a judgment affirming, denying, or reversing the decision of the [Commissioner], with or without remanding the cause for a hearing. 42 U.S.C. § 405(g). Where there is insufficient support for the ALJ's findings, "the appropriate remedy is reversal and a sentence-four remand for further consideration." *Morgan v. Astrue*, 10-207, 2011 WL 2292305, at *8 (E.D. Ky. June 8, 2011) (citing *Faucher*, 17 F.3d at 174).

Plaintiff asserts that this matter should be reversed and/or remanded under sentences four and six because (1) "[t]he ALJ erred in not considering the decision of the Michigan Department of Human Services that [P]laintiff is disabled, utilizing the same standard that the ALJ was to use in making that determination;" (2) "[t]he ALJ erroneously found that [P]laintiff had a high school education;" (3) "[t]he ALJ's finding that [P]laintiff's condition had not worsened since the prior decision, so as to require a reassessment of his RFC, is not supported by the requisite evidence;" and (4) "[t]he ALJ's RFC assessment is contradictory when it comes to neck

movements, and that contradiction must be resolved before an accurate RFC can be determined." (Docket no. 15 at 3-4, 14-20.)

> 1. *The ALJ's Failure to Consider the Decision of the Michigan Department of Human Services*

On February 6, 2014, an ALJ for the State of Michigan's Department of Human Services (DHS) issued a decision in which she concluded that Plaintiff was disabled for purposes of the Medical Assistance (MA) program established by Title XIX of the Social Security Act. (Docket no. 16.) This decision is not part of the administrative record in this matter; however, at the administrative hearing before ALJ Horowitz, Plaintiff mentioned that he had attended a hearing at DHS in Adrian, Michigan, in relation to his claim for Medicaid. (TR 37-38.) Indeed, Plaintiff attended that hearing on January 30, 2014, after which the above-cited DHS decision issued. (*See* docket no. 16 at 1.) Plaintiff argues that his testimonial reference to the DHS hearing "evidenced the existence of a decision from another governmental agency that could have been significant in the disposition of this matter." (Docket no. 15 at 14.) Plaintiff further argues that the ALJ was obligated to consider the DHS decision under Social Security Ruling (SSR) 06-3p, and that the ALJ's failure to obtain and consider the decision warrants a sentence-six remand. (*Id.* at 14-16.) Defendant argues that Plaintiff's argument should be rejected because the DHS decision is not new or material evidence and because Plaintiff has not shown good cause for failing to present the decision for inclusion in the administrative record before ALJ Horowitz. (Docket no. 19 at 20-24.)

Under sentence six of 42 U.S.C. § 405(g), the plaintiff has the burden to demonstrate that this evidence is "new" and "material" and that there is a "good cause" for failing to present this evidence in the prior proceeding. *Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 483 (6th Cir.

7

2006); *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 598 (6th Cir. 2005). Courts "are not free to dispense with these statutory requirements." *Hollon*, 447 F.3d at 486. "[E]vidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). To establish materiality, a plaintiff must show that there is a reasonable probability that the introduction of the new evidence would have persuaded the Commissioner to reach a different conclusion. *Foster*, 279 F.3d at 357; *Sizemore v. Sec. of Health & Human Servs.*, 865 F.2d 709, 711 (6th Cir. 1988); *Hensley v. Comm'r of Soc. Sec.*, 214 F. App'x 547, 550 (6th Cir. 2007). "A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ." *Foster*, 279 F.3d at 357 (citing *Willis v. Sec'y of Health & Human Servs.*, 727 F.2d 551, 554 (6th Cir. 1984)).

Here, the February 6, 2014 DHS decision is not "new" evidence, as it existed at the time of the March 30, 2016 hearing in this matter. Moreover, Plaintiff has not provided good cause for his failure to submit the DHS decision to the ALJ for consideration as part of the administrative record. The only explanation provided by Plaintiff is that he was represented by a different attorney from a different law firm at the time of the hearing, who did not obtain the DHS decision. (Docket no. 15 at 15.) In providing this explanation, Plaintiff implies that his former attorney was ineffective or incompetent for failing to obtain the decision and submit it to ALJ Horowitz. But "there is absolutely no statutory or decisional authority for [Plaintiff's] unstated, but unmistakable, premise that the alleged incompetence of [his] first attorney constitutes 'good cause' in this context." *Taylor v. Comm'r of Soc. Sec.*, 43 F. App'x 941, 943 (6th Cir. 2002). In fact, courts in this district faced with similar fact patterns have found that an

8

attorney's incompetence does not constitute good cause.  *See, e.g.*, *Behmlander v. Comm'r of Soc. Sec.*, No. 12-cv-14424, 2013 WL 5516456, at *7 (E.D. Mich. Oct. 3, 2013); *Leitz v. Comm'r of Soc. Sec.*, No. 11-cv-10203, 2012 WL 2003786, at *2 (E.D. Mich. June 5, 2012) ("Plaintiff's contention that his former attorney neglected to obtain the treatment records of his therapist and psychologist does not sufficiently establish 'good cause.'").  Accordingly, Plaintiff's Motion for a sentence six remand is without merit.

To the extent that Plaintiff argues that the ALJ erred by failing to obtain the DHS decision himself, this argument also fails.  The regulation governing the responsibility for evidence, 20 C.F.R. § 404.1512, provides, in relevant part, as follows:

> (a) General. In general, *you have to prove to us* that you are blind or disabled. *You must inform us about or submit all evidence known to you* that relates to whether or not you are blind or disabled. This duty is ongoing and requires you to disclose any additional related evidence about which you become aware. . . .
>
> . . .
>
> (c) *Your responsibility. You must inform us about or submit all evidence known to you* that relates to whether or not you are blind or disabled. . . .
>
> (d) *Our responsibility*. Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application. *We will make every reasonable effort to help you get medical reports from your own medical sources when you give us permission to request the reports.*

20 C.F.R. § 404.1512 (eff. Apr. 20, 2015 to Mar. 26, 2017) (emphasis added).

Thus, as a general matter, it is a claimant's burden to provide a complete record. *Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant.").  An ALJ only has

a heightened duty to develop the record where a claimant, unfamiliar with the hearing procedures, appears without counsel. *Lashley v. Sec'y of Health & Human Serys.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983) (citations omitted).

The circumstances giving rise to the heightened duty do not exist here. Moreover, there is no indication that Plaintiff or his attorney requested assistance from the ALJ in obtaining the DHS decision. To the contrary, Plaintiff's attorney represented to the ALJ at the administrative hearing in this matter that the record was complete. (TR 32.) Therefore, the ALJ did not err by not obtaining the DHS decision on Plaintiff's behalf, and Plaintiff's Motion should be denied with regard to this issue.

2. *The ALJ's Finding that Plaintiff Had a High School Education*

Plaintiff argues that the ALJ erred in his decision by finding that Plaintiff "has at least a high school education." (Docket no. 15 at 16-17 (citing TR 22).) Plaintiff explains that he actually left school after the seventh grade. (*Id.* at 15.) Plaintiff argues that because the ALJ did not ask the VE a formal hypothetical question, it is unclear whether the VE caught the ALJ's error in this regard or whether the VE properly considered Plaintiff's true educational status when determining whether there were jobs that Plaintiff could perform. (*Id.* at 16-17.) Defendant argues that the ALJ's erroneous finding in his decision is harmless, because "the VE was aware of Plaintiff's educational level and provided with Plaintiff's RFC and vocational background before affirming that the jobs identified by the previous VE still existed in the current economy." (Docket no. 19 at 16.)

As an initial matter, it is abundantly clear that the VE did not rely on the ALJ's erroneous finding in the decision, because the April 18, 2016 decision was issued *after* the VE testified at the March 30, 2016 hearing. The true issue is whether the VE's testimony was based on

Plaintiff's correct educational level. And a review of the hearing transcript reveals that it was. At the hearing, the ALJ discussed the details of ALJ Stewart's decision, including the RFC determination and the previous VE's testimony regarding the jobs that the hypothetical individual with Plaintiff's RFC and vocational profile could perform. (TR 35-36.) The ALJ noted that he was bound by ALJ Stewart's decision absent a change in circumstances or the law, and he then proceeded to take Plaintiff's testimony to determine whether or not there had been any changes since ALJ Stewart's decision. (TR 34, 36.) In questioning Plaintiff, the ALJ elicited testimony regarding Plaintiff's educational level and job training:

> Q    How much education do you have?
>
> A    Last grade was seventh.
>
> Q    Did you ever try to get a GED after that?
>
> A    No
>
> . . .
>
> Q    Have you had any job training?
>
> A    Just the truck driving school I went to years ago to get my CDL license.

(TR 37.)

The transcript indicates that the VE was present during Plaintiff's testimony, and after listening to Plaintiff testify, the VE indicated that he did not need any further information. (TR 31-32, 49.) Accordingly, the VE was aware of and relied upon the fact that Plaintiff had only a seventh grade education and no GED when he testified that the jobs provided by the previous VE still existed in the same numbers as at the time of the previous administrative hearing. (*See* TR 49.) The VE's testimony was based upon Plaintiff's accurate education level and constitutes valid, substantial evidence upon which the ALJ relied in determining that there were jobs that

existed in significant numbers in the national economy that Plaintiff could have performed through the date last insured. (*See* TR 22-23.) The ALJ's erroneous finding that Plaintiff had a high school education is therefore harmless and does not warrant remand.

### 3. The ALJ's Application of Res Judicata

Plaintiff asserts that the ALJ erred by "simply adopt[ing] the prior ALJ's RFC assessment" despite new and material evidence suggesting that Plaintiff's condition had worsened since the prior decision, which evidence should have led to further analysis from the ALJ and an RFC assessment that reflected the change. (Docket no. 15 at 17-19.) Plaintiff argues that "[t]he ALJ's finding that [P]laintiff's condition had not worsened since the prior decision, so as to require a reassessment of his RFC," is not supported by substantial evidence. (*Id*.) Defendant argues that the ALJ properly adopted the findings in the previous ALJ decision. (Docket no. 19 at 7-15.)

In *Drummond v. Comm'r of Soc. Sec.*, the Sixth Circuit held that social-security claimants and the Commissioner are barred by principles of *res judicata* from relitigating issues that have previously been determined. 126 F.3d 837 (6th Cir. 1997). The Commissioner is bound by the principles of *res judicata* unless there is new and material evidence of changed circumstances. *Id*. at 842; SSAR 98-4(6), 63 FR 29771-01 (June 1, 1998). Where a claimant who has previously been adjudicated "not disabled" seeks to avoid application of *res judicata*, he must provide proof that his condition has worsened since the date of the prior decision to such a degree that he is no longer capable of engaging in substantial gainful activity. *Vesey v. Comm'r of Soc. Sec.*, No. 11-10967, 2012 WL 4475657, at *10 (E.D. Mich. Aug. 6, 2012) (citations omitted).

As previously noted, Plaintiff was found "not disabled" by ALJ Nancy M. Stewart on August 30, 2013, who also determined that Plaintiff suffered from severe impairments of degenerative disc disease of the spine, diabetes mellitus, hypertensive vascular disease, and carpal tunnel syndrome. (TR 55-68.) She further found that Plaintiff had the following RFC:

> [C]laimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 404.967(b) except he can push and pull within the weight limits only occasionally with the upper and lower extremities. Additionally, he can stand and walk for 6 out of 8 hours with no prolonged walking greater than 30 minutes at a time. Furthermore, the claimant can sit for 6 out of 8 hours with the ability to stand and stretch for one minute at the end of each hour not to exceed ten percent of the workday. The claimant can never climb ladders, ropes, or scaffolds or reach overhead bilaterally; he can occasionally climb ramps and stairs, feel, handle, balance, stoop, kneel, crouch, crawl, and operate foot controls with the lower extremities, bilaterally; and he can frequently engage in fine fingering. Additionally, although the claimant is not capable of repetitive up and down or side-to-side movements of the neck, he retains the ability to engage in up and down or side-to-side movements of the neck frequently. Finally, due to his subjective complaints of pain and the side effects of his medication, the claimant should be limited to unskilled work.

(TR 59-67.) Thus, ALJ Horowitz was bound by this determination unless he found new and material evidence of changed circumstances. He did not.

Plaintiff argues that the ALJ ignored the fact that Plaintiff had begun to complain of sensory disturbances in his hands during 2013. (Docket no. 15 at 17 (citing TR 339).) Plaintiff also asserts that he was ultimately diagnosed with cervical radiculopathy, which led to another set of MRIs in December of 2014. (*Id*. at 17-18.) Plaintiff explains that the cervical MRI showed an increase in findings between 2011 and 2014, which was characterized as a slight progression of his cervical spondylosis. (*Id*. at 18.) Plaintiff admits that the ALJ "actually acknowledged" these MRI results but argues that the ALJ "essentially ignored" them in adopting the previous RFC determination. (*Id*.) Plaintiff further argues that although the 2014 MRIs of his lumbar and thoracic spine showed some improvement since the 2011 MRIs, they still

13

revealed significant pathology at multiple levels of his spine, which supports his claim for disability. (*Id.*)

Here, the ALJ noted that he was bound by ALJ Stewart's findings and determinations in the absence of new and material evidence or a showing of changed circumstances; considered and discussed the relevant record evidence, including the evidence cited by Plaintiff; determined that "the positive objective clinical and diagnostic findings since the alleged onset date . . . do not support more restrictive functional limitations than those assessed;" and he adopted ALJ Stewart's RFC determination. (TR 11, 15-22.) The ALJ provided the following explanation in this regard:

> While [the claimant] alleged the [sic] his condition has progressively worsened, the underlying pathology, as reflected in the objective medical evidence, has been relatively minimal and fails to corroborate his allegations. Since his amended alleged onset date and prior to his date last insured, there is no clinical or diagnostic evidence indicating the claimant suffered from any end organ damage, neuropathy, acidosis, or diabetes-related visual impairment. Rather, upon examination, the claimant had normal respiratory, cardiovascular and neurologist examination (B5F/16 and 17, dated March 3, 2014 and June 3, 2014). He did not have chest pain, discomfort, palpitations, dyspnea, or cough (B5F/20, dated September 9, 2013).

(TR 17-18.)

And although Plaintiff points out that he had begun to complain about sensory disturbances in his hands during 2013, the treatment note to which Plaintiff cites was generated on March 11, 2013, prior to the alleged onset date in this matter. (Docket no. 15 at 17 (citing TR 339).) The ALJ, however, pointed out that Plaintiff reported *no* tingling of the limbs during the alleged disability period, on November 11, 2013. (TR 18 (citing TR 275, 334).) The ALJ also noted Plaintiff's reports as well as several treatment records reflecting that Plaintiff's medications were generally effective in controlling his pain, leg numbness, diabetes, and

hypertension, despite questionable compliance with the diabetes medication, and that the diabetes and antihypertensive medications did not cause side effects. (TR 18-19.)

With regard to Plaintiff's musculoskeletal impairments, the ALJ discussed the MRIs of Plaintiff's spine taken both before and after the alleged disability period, noting that the latter images failed to show evidence of significant deterioration, and that Plaintiff's spinal impairments remained mild with a slight improvement in his thoracic spine and a slight progression in his cervical spine. (TR 19-20.) The ALJ also pointed out that there was no evidence of the use of an assistive device, physical therapy, emergency room visits, surgery, hospitalization, epidural steroid injections, nerve block treatments, or use of a transcutaneous electrical nerve stimulation (TENS) unit during the alleged disability period. (TR 19 (citing TR 356-94, 419-52).) And the ALJ further noted that Plaintiff only treated with his chiropractor twice during the alleged disability period, and only when Plaintiff experienced some acute exacerbation of his back pain due to an intervening incident or activity, *e.g.*, playing horseshoes, not due to his chronic condition. (TR 19.)

Additionally, the ALJ stated that Plaintiff attempted to minimize his daily activities at the hearing, and he found that the degree of Plaintiff's self-asserted limitations was not supported by the objective medical evidence or by the treatment records, which reflected that Plaintiff engaged in activities like clearing and burning brush and playing yard games. (TR 20-21.) The ALJ further noted that Plaintiff's ability to drive without medical restriction was significant, in that it showed no signs of neuropathy or numbness that prevented him from using a steering wheel or foot pedals. (TR 20.) The ALJ concluded that the evidence did not justify any greater or additional limitations than those prescribed by ALJ Stewart's RFC assessment. (TR 21-22.)

The discussion above demonstrates that the ALJ properly considered the record evidence and based his finding that there was no new and material evidence of changed circumstances sufficient to warrant a change in Plaintiff's RFC on substantial evidence. Accordingly, the ALJ's decision in this regard should not be disturbed.

### 4. The ALJ's RFC Assessment Regarding Plaintiff's Neck Movements

Plaintiff contends that the portion of the ALJ's RFC assessment regarding Plaintiff's ability to move his neck is internally inconsistent and that the "contradiction must be resolved before an accurate RFC can be determined." (Docket no. 15 at 19-20.) The portion of the RFC assessment at issue reads as follows:

> Additionally, although the claimant is not capable of repetitive up and down or side-to-side movements of the neck, he retains the ability to engage in up and down or side-to-side movements of the neck frequently.

(TR 15.) Plaintiff correctly points out that SSR 83-10 defines "frequent" as "occurring from one-third to two-thirds of the time." (*Id.* at 19 (citing SSR 83-10, 1983 WL 31251, at *6 (S.S.A. 1983)).) Plaintiff then argues that "a task that is being performed as much as two-thirds of the workday is being performed repetitively, and the distinction the ALJ attempted to draw is therefore no distinction at all." (*Id.*) But Plaintiff provides no support for his characterization of the term "repetitive," and the term is not defined by the Social Security regulations. *See Lefevers v. Astrue*, No. 09-143-GFVT, 2010 WL 11519608, at *7 (E.D. Ky. May 11, 2010), *aff'd sub nom. LeFevers v. Comm'r of Soc. Sec.*, 476 F. App'x 608 (6th Cir. 2012). In *Lefevers*, when faced with a similar question, the district court opined that "the ordinary understanding of 'repetitive lifting' lends to the interpretation that it is more continuous and sustained than the 'frequent' lifting involved in light work." *Id.* The Sixth Circuit affirmed, stating, "[i]n ordinary nomenclature, a prohibition on 'repetitive' lifting does not preclude a capacity for 'frequent'

16

lifting, as the district court held. No reversible inconsistency exists." *LeFevers v. Comm'r of Soc. Sec.*, 476 F. App'x at 611. Accordingly, under *LeFevers*, the ALJ's determination that Plaintiff did not have the RFC to perform repetitive up and down or side-to-side neck movements does not contradict his finding that Plaintiff is capable of performing those movements frequently. There is no error here.

## VI. CONCLUSION

For the reasons stated herein, the court should **DENY** Plaintiff's Motion for Summary Judgment (docket no. 15) and **GRANT** Defendant's Motion for Summary Judgment (docket no. 19).

## REVIEW OF REPORT AND RECOMMENDATION

Either party to this action may object to and seek review of this Report and Recommendation, but must act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within fourteen (14) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: August 22, 2018    s/ Mona K. Majzoub
MONA K. MAJZOUB
UNITED STATES MAGISTRATE JUDGE

**PROOF OF SERVICE**

I hereby certify that a copy of this Report and Recommendation was served upon counsel of record on this date.

Dated: August 22, 2018    s/ Leanne Hosking
Case Manager